# EXHIBIT B

## IN THE CIRCUIT COURT FOR BALTIMORE CITY

| | |
|---|---|
| **THOMAS WILSON**<br>**individually and on behalf of**<br>**all others similarly situated**<br>**106 South Front Street, Apt. 4C**<br>**Philadelphia, Pennsylvania 19106,**<br><br>**JOHN GALVAGNO**<br>**individually and on behalf of**<br>**all others similarly situated**<br>**106 South Front Street, Apt. 4C**<br>**Philadelphia, Pennsylvania 19106,**<br><br>*and*<br><br>**ERICA CRUZ,**<br>**individually and on behalf of**<br>**all others similarly situated**<br>**2228 Strahle Street**<br>**Philadelphia, Pennsylvania 19152,**<br><br>*Plaintiffs,*<br><br>vs.<br><br>**PL Phase One Operations L.P.**<br>**d/b/a XFINITY Live! Philadelphia**<br>**and 1100 Social**<br>601 E. Pratt Street, 6th Floor<br>Baltimore, MD 21202<br><br>*Defendant.* | Case No.: |

## CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND

Plaintiffs Thomas Wilson, John Galvagno, and Erica Cruz, individually and on behalf of all others similarly situated, bring this action, pursuant to Maryland Rule 2-231, against the following Defendant, PL Phase One Operations L.P. d/b/a XFINITY Live! Philadelphia and 1100 Social, (hereinafter "XFINITY Live!"). Plaintiffs seek to secure redress for Defendant's practice of sending text messages to cellular telephone numbers in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.* Plaintiffs, for this class action complaint, allege

the following based upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by counsel:

## PARTIES, JURISDICTION, AND VENUE

1.      At all times relevant hereto, Plaintiffs Thomas Wilson, John Galvagno, and Erica Cruz have been residents of Philadelphia County, Pennsylvania.

2.      Defendants XFINITY Live! and 1100 Social are fictitious entities with their principal place of business at 1100 Pattison Avenue, Philadelphia, PA 19148.

3.      Defendant PL Phase One Operations, L.P. is a Pennsylvania limited partnership with its principal place of business at 601 E. Pratt Street, 6th Floor, Baltimore, MD 21202.   PL Phase One Operations, L.P. can be served through their registered agent Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, PA 17110.

4.      Defendant PL Phase One Operations, L.P. own and operate XFINITY Live! Philadelphia and 1100 Social and are therefore liable for the tortious conduct of these fictitious entities.

5.      Pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102(a), this court has personal jurisdiction over Defendant because their principal place of business is located in Baltimore City, Maryland.

6.      Pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-201(a), venue is proper because "[D]efendant resides, carries on regular business, is employed, [and] habitually engages in a vocation" by maintaining its principal place of business in Baltimore City, Maryland.

7.      Further, jurisdiction and venue are proper pursuant to 47 U.S.C. § 227(b)(3), which grants state courts jurisdiction over actions alleging violations of 47 U.S.C § 227.

## NATURE OF THE ACTION

8.     XFINITY Live! is an entertainment district located in South Philadelphia, Pennsylvania. 1100 Social is a drinking establishment located within XFINITY Live!

9.     Between July 30, 2014 to April 4, 2018, in order to advertise and market their products and services, to increase revenue, to expand their customer base, and to pursue other marketing objections, Defendant caused advertising and/or telemarketing text messages to be sent to the cellular telephones of Plaintiffs and the putative class members in violation of the TCPA.

10.    Specifically, Defendant (either directly or through a third-party telemarketer) sent unsolicited text messages to the cellular telephones of Plaintiffs and the putative class members promoting specials and events at XFINITY Live! and/or 1100 Social and encouraging Plaintiffs and the putative class members to visit XFINITY Live! and/or 1100 Social with their friends or associates.

11.    By sending the text messages at issue in this Complaint, Defendant has caused Plaintiffs and the putative class members (as defined herein) actual harm.

12.    On information and belief, Defendant routinely sent these text messages despite the fact that Plaintiffs and the putative class members:

        (a)    never provided prior express consent in writing, or otherwise, for Defendant to send advertising or telemarketing text messages to their cellular telephone numbers; and/or

        (b)    never provided prior express consent in writing, or otherwise, for Defendant to send text messages to their cellular telephone numbers using an automatic telephone dialing system (as defined by the TCPA).

13.    Defendant also sent such advertising and/or telemarketing text messages to

Plaintiffs and other putative class members even though (i) they failed to establish written policies and procedures to ensure compliance with the national and/or internal do-not-call rules and regulations, and train their staff in compliance with such policies and procedures, and/or (ii) Plaintiffs and other putative class members have registered their telephone numbers on the national do-not-call registry.

14. Plaintiffs, on their own behalf and on behalf of all others similarly situated, brings the instant lawsuit seeking an injunction requiring Defendant to cease all unsolicited text message activities and for an award of statutory damages to Plaintiffs and members of the putative class under the TCPA.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
### 47 U.S.C. § 227, *et seq.*

15. Advancements in telephone dialing technology since the 1980s and 90s have made reaching a large number of consumers by telephone easier and more cost-effective. However, this technology has also brought with it an onslaught of unsolicited robocalls, spam text messages, and junk faxes that intrude on individual privacy and waste consumer time and money.

16. Senator Ernest Hollings, sponsor of the TCPA, described such marketing practices as "the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1990).

17. The FCC recently noted, "every month, U.S. consumers are bombarded by an estimated 2.4 billion robocalls." *In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, Notice of Proposed Rulemaking, Statement of Chairman Pai, 32 FCC Rcd. 2306, 2331 (2017) (emphasis added). That number has since increased to an estimated 2.5 billion

robocalls per month as of October 2017.[1]

18.    In response to these unwanted telephone calls, text messages, and junk faxes, the federal government and numerous states have enacted legislation to combat these widespread telemarketing abuses.  As Congress recognized:

> Many customers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers. ... *Banning such automated or prerecorded telephone calls* to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, *is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.*

Pub. L. No. 102-243 §§ 2(6) & (12) (1991), *codified at* 47 U.S.C. § 227 (emphasis added).[2]

19.    As is relevant here, the TCPA prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service, ..." 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).

20.    For purposes of the TCPA, "[a] text message to a cellular telephone ... qualif[ies] as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016) (citation omitted).[3]

---

[1]    *See In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, Report and Order and Further Notice of Proposed Rulemaking, Statements of Commissioners Clyburn and Rosenworcel, 32 FCC Rcd. 9706, 9756 & 9759 (2017).

[2]    *See also Susinno v. Work Out World*, 862 F.3d 346, 352 (3rd Cir. 2017) ("'[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients,' ...") (*quoting Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).

[3]    *See also In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Order, 30 FCC Rcd. 12484, 12485, ¶ 3 (2016) (the TCPA's prohibition on robocalls "encompasses both voice and text calls, including short message service (SMS) calls and text calls and text calls made using Internet-to-phone technology, ...").

21.    "Automatic telephone dialing system" ("ATDS") refers to any equipment that has the "capacity to dial numbers without human intervention[.]" *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) (*citing In re Rules & Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14092, ¶ 132 (2003) ("2003 TCPA Order")).

22.    In 2012, the FCC – the agency tasked with promulgating the implementing regulations of the TCPA – revised its TCPA rules to require *prior express written consent* before initiating a telephone call "that includes or introduces an advertisement or constitutes telemarketing[.]" 47 C.F.R. § 64.1200(a)(2); *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6589, ¶ 37 & fn. 113 (2013) ("Dish Network Ruling").

23.    According to FCC regulations, *"prior express consent"* must (i) be in writing; (ii) be signed by the person providing the consent; (iii) clearly authorize the calling party to use an ATDS or artificial or pre-recorded voice; (iv) specify the telephone number to which the person is consenting to be called; and (v) not be a condition of purchasing any goods or services. *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, FCC Report and Order, 27 FCC Rcd. 1830, 1843, ¶ 32 (2012) ("2012 TCPA Order").

24.    In 2003, the FCC adopted a national do-not-call registry to provide consumers with an option to prohibit unwanted telemarketing solicitations. *2003 TCPA Order* at 14034-35, ¶ 28.

25.    The FCC rules also prohibit any person or entity from initiating a telemarketing solicitation to any "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). For purposes of this provision of the TCPA, wireless subscribers who are registered on the national do-not-call list are presumed to be "residential subscribers." *2003 TCPA Order* at 14038-39, ¶ 36.

26.     The FCC rules also require telemarketers to maintain a company-specific internal do-not-call list, to immediately record a consumer's do-not-call request, and to cease any further telemarketing calls within thirty days of such request.  47 C.F.R. § 64.1200(d)(3).

27.     The FCC's regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). Whether a call is an "advertisement" depends on the content of the material. *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

28.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The "telemarketing" inquiry focuses on the purpose of the telephone call or message, rather than its content. *Golan*, 788 F.3d at 820.

29.     The FCC has also made rulings regarding the TCPA's vicarious liability standards as they relate to telemarketing.  As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 (1995).

30.     The FCC has also clarified that vicarious liability is imposed under federal common law principles of agency for violations of either sections 227(b) or (c) that are committed by third-party telemarketers. *Dish Network Ruling* at 6580 & ¶ 18.

31.     The TCPA provides for injunctive relief and the greater of actual damages or $500 per violation, which may be trebled where defendant's conduct was done willfully or knowingly. 47 U.S.C. §§ 227(b)(3) and (c)(5).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

32.     Between July 30, 2014 to April 4, 2018, Defendant and/or their agents utilized an ATDS to send text messages to the wireless telephone numbers of Plaintiffs and the putative class members.

33.     Specifically, the hardware and software used by Defendants and/or their agents has the capacity to generate and store random numbers, or store lists of telephone numbers, and to dial those numbers, *en masse*, in an automated fashion without human intervention.

34.     Plaintiffs and the putative class never provided prior express consent, in writing or otherwise, for Defendant to send autodialed, advertising, telemarketing text messages, and/or any other communication to their cellular telephone numbers.

35.     Defendant (i) requires consumers or businesses to provide their telephone numbers as a condition of providing happy-hour goods and services, (ii) do not advise consumers or businesses they intend to send autodialed, advertising, telemarketing text messages, and/or any other communication to their cellular telephone number, and (iii) do not obtain prior express consent, written or otherwise, to send autodialed, advertising, telemarketing text messages, and/or any other communication to the consumer's or business's cellular telephone number.

36.     When Defendant obtains the cellular telephone number of a consumer or business, they add them to a stored list of numbers to which Defendant and/or their agents repeatedly send autodialed, advertising, and/or telemarketing text messages.

37.     Defendant's text messages are sent with equipment having the capacity to dial telephone numbers without human intervention, the equipment is unattended by human beings, and the equipment does, in fact, send text messages automatically, *i.e.*, without human intervention.

38.     The equipment employed by Defendant and/or their agents not only have the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically send text messages to those numbers.

39.     The text messages sent by Defendant to Plaintiffs and the putative class were made for a commercial purpose in that they contain the brand name and location of XFINITY Live! and/or 1100 Social, they promote specials and events at XFINITY Live! and/or 1100 Social, and/or they encourage Plaintiffs and the putative class members to visit XFINITY Live! and/or 1100 Social with their friends or associates.

40.     Defendant's text messages are advertisements and/or constitute telemarketing as defined by the TCPA. *See* 47 U.S.C. § 227(a); *Golan*, 788 F.3d at 820.

41.     Not only does Defendant fail to obtain prior express consent before sending such text messages, Defendant's text messages do not provide a way of opting out of future text messages.

42.     On information and belief, Defendant sent such advertising and/or telemarketing text messages without first establishing written policies or procedures to ensure compliance with the national and/or internal do-not-call rules and regulations, as required by 47 C.F.R. § 64.1200(d), and Defendants failed to train their staff in compliance with such policies and procedures.

43.     Defendants sent these unsolicited text messages to Plaintiff and other putative class members' cellular telephone numbers who may have their telephone numbers registered with the national do-not-call registry.

44.     On information and belief, many of Defendant's text messages were sent within 12

months of one or more prior text messages, and Defendant lacks an adequate system for preventing the transmission of numerous automated text messages to the same telephone number.

45.    Defendant is aware that the above-described text messages are being sent to consumers and businesses without their prior express consent, and to consumers and businesses who have registered their phone numbers on the do-not-call registry, but Defendant willfully continues to send them anyways.

46.    Plaintiffs and the putative class members have been substantially damaged by Defendant's repeated text messages[4] – their privacy was invaded; they were annoyed and inconvenienced; the repeated text messages intruded upon their seclusion and interfered with the exclusive use of their property; they were charged out of pocket cellular airtime minutes for the text messages and cellular data for services related to the text message content;[5] the ATDS calls intruded upon and occupied the capacity of the cellular phones of Plaintiff and the class members, depleted and/or reduced the lifespan of their cellular phone batteries,[6] caused Plaintiffs and the

---

[4]    *See Van Patten*, 847 F.3d at 1043 (allegations of "[u]nsolicited phone calls or text messages ... invade the privacy and disturb the solitude of their recipients" and are sufficient to confer Article III standing); *Susinno*, 862 F.3d 346 (3rd Cir. 2017) (same); *Manuel v. NRA Grp. LLC*, 722 Fed. Appx. 141 (3rd Cir. 2018) (unpublished); *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316 (3rd Cir. 2015).

[5]    *See In re Rules Implementing the Tel. Consumer Prot. Act of* 1991, 23 FCC Red. 559, 562, ¶ 7 (2008) ("wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."); *see also Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) (recipients are damaged because they are charged "out of pocket" cellular airtime minutes); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729 (S.D. Tx. 2012) (Plaintiff's statement that he pays a third-party provider for cellular phone services is sufficient to show that an individual was charged for the calls); *Warnick v. Dish Network LLC*, No. 12-cv-01952 (D. Co. Sep. 30, 2014) ("users of cellular telephone numbers *are indeed charged* for incoming calls, regardless of whether they incur any *additional* charges for such calls.").

[6]    *See e.g.*, Apple Inc., *Battery Servicing and Recycling*, http://www.apple.com/batteries/service-and-recycling ("All rechargeable batteries have a limited lifespan ... Your own battery's lifespan will vary depending on how you use your device ...").

class members to incur the costs of electricity to recharge their phones;[7] and, on information and belief, Defendants' repeated text messages have caused unwanted use, damage and/or depletion of their property, including, but not limited to, a reduction in the lifespan of their LCD screens, speakers, vibration motors, and other hardware and/or electronic components.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF THOMAS WILSON

47.     At all times relevant hereto, Plaintiff Thomas Wilson has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone, which has an area code specific to eastern Pennsylvania.

48.     Plaintiff Wilson visited XFINITY Live! and/or 1100 Social during a happy hour.

49.     As a condition to providing Plaintiff with its happy-hour special prices, and at the request of the Defendants, Plaintiff was required to provide his personal information, including his name and cell phone number, in order to obtain the happy-hour discounts on food and drinks.

50.     On multiple occasions in 2015, 2016, and 2017, Defendants and/or their agents caused text messages to be sent, automatically and without human intervention, to Plaintiff's cell phone.

51.     The text messages contained XFINITY Live! and/or 1100 Social's brand name and location, promoted specials and events at XFINITY Live! and/or 1100 Social, and/or encouraged Plaintiff to visit XFINITY Live! and/or 1100 Social with his friends or associates.

52.     The text messages sent by Defendants to Plaintiff were made for a commercial purpose and are advertisements and/or constitute telemarketing as defined by the TCPA.

53.     Defendants did not provide Plaintiff with notice that they intended to send multiple

---

[7]     *See Mey v. Got Warranty, supra fn.* 2, 193 F. Supp. 3d at 645-47 (Intangible harms include "intrusion upon and occupation of the plaintiff's cell phone. ... [and] intrusion upon another person's computerized electronic equipment ..." Tangible harms, including the cost of electricity, "[w]hile certainly small, [are] real, and the cumulative effect could be consequential.").

autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers.

54.     Plaintiff never provided express consent in writing, or otherwise, for Defendants to send such text messages to their cell phones.

55.     If Defendants had advised Plaintiff that they intended to incessantly send advertising and/or telemarketing text messages to their cellular phone numbers, and/or if Plaintiff and the class members had not been required to provide their personal information in order to receive happy-hour discounts on food and drink, Plaintiff and the class members would have expressly refused to provide their personal information to Defendants.

56.     In November 2010, Plaintiff registered his wireless number with the national do-not-call registry and received confirmation that his do-not-call registration would be effective as of December 7, 2010.

57.     Since the effective date of Plaintiff's registration on the national do-not-call list in December 2010 and between July 30, 2014 and April 4, 2018, Defendants have sent numerous advertising and/or telemarketing text messages to Plaintiff, many of which were within 12 months of one or more prior text messages.

58.     As a result of repeated and incessant advertising and/or telemarketing calls and text messages being made to his cell phone number, including those made by Defendants, in February 2017, Plaintiff applied for and received a new cell phone and cell phone number.

FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF JOHN GALVAGNO

59.     At all times relevant hereto, Plaintiff John Galvagno has paid a third-party provider for cellular telephone service and cellular data service on his personal cellular telephone, which has an area code specific to eastern Pennsylvania.

60.     Plaintiff Galvagno visited XFINITY Live! and/or 1100 Social during a happy hour.

61.     As a condition to providing Plaintiff with its happy-hour special prices, and at the request of the Defendant, Plaintiff was required to provide his personal information, including his name and cell phone number, in order to obtain the happy-hour discounts on food and drinks.

62.     On multiple occasions in 2016 and 2017, Defendants and/or their agents caused text messages to be sent, automatically and without human intervention, to Plaintiff's cell phone.

63.     The text messages contained XFINITY Live! and/or 1100 Social's brand name and location, promoted specials and events at XFINITY Live! and/or 1100 Social, and/or encouraged Plaintiff to visit XFINITY Live! and/or 1100 Social with his friends or associates.

64.     The text messages sent by Defendant to Plaintiff were made for a commercial purpose and are advertisements and/or constitute telemarketing as defined by the TCPA.

65.     Defendant did not provide Plaintiff with notice that they intended to send multiple autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers.

66.     Plaintiff never provided express consent in writing, or otherwise, for Defendant to send such text messages to their cell phones.

67.     If Defendant had advised Plaintiff and the class members that they intended to incessantly send advertising and/or telemarketing text messages to their cellular phone numbers, and/or if Plaintiff and the class members had not been required to provide their personal information in order to receive happy-hour discounts on food and drink, Plaintiff and the class members would have expressly refused to provide their personal information to Defendant.

### FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF ERICA CRUZ

68.     At all times relevant hereto, Plaintiff Erica Cruz has paid a third-party provider for cellular telephone service and cellular data service on her personal cellular telephone, which has an area code specific to eastern Pennsylvania.

69.     Plaintiff Cruz visited XFINITY Live! and/or 1100 Social during a happy hour.

70.     As a condition to providing Plaintiff with its happy-hour special prices, and at the request of the Defendant, Plaintiff was required to provide her personal information, including her name and cell phone number, in order to obtain the happy-hour discounts on food and drinks.

71.     On multiple occasions in 2016 and 2017, Defendants and/or their agents caused text messages to be sent, automatically and without human intervention, to Plaintiff's cell phone.

72.     The text messages contained XFINITY Live! and/or 1100 Social's brand name and location, promoted specials and events at XFINITY Live! and/or 1100 Social, and/or encouraged Plaintiff to visit XFINITY Live! and/or 1100 Social with her friends or associates.

73.     The text messages sent by Defendant to Plaintiff were made for a commercial purpose and are advertisements and/or constitute telemarketing as defined by the TCPA.

74.     Defendant did not provide Plaintiff with notice that they intended to send multiple autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers.

75.     Plaintiff never provided express consent in writing, or otherwise, for Defendant to send such text messages to their cell phones.

76.     If Defendant had advised Plaintiff and the class members that they intended to incessantly send advertising and/or telemarketing text messages to their cellular phone numbers, and/or if Plaintiff and the class members had not been required to provide their personal information in order to receive happy-hour discounts on food and drink, Plaintiff and the class members would have expressly refused to provide their personal information to Defendant.

## CLASS ACTION ALLEGATIONS

77.     Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

78.     As to Count I for violation of the TCPA (the "227(b)(1)(A)(iii) Class"), Plaintiff

brings this action on behalf of himself and on behalf of a putative class defined as:

> All persons and entities within the United States to whom Defendants (or a
> third party on Defendants' behalf) sent a text message to their cellular or
> wireless telephone, promoting special pricing or events at XFINITY Live!
> and/or 1100 Social, between July 30, 2014 to April 4, 2018.

79.     As to Count II for violation of the TCPA (the "64.1200(d) Class"), Plaintiff brings

this action on behalf of himself and on behalf of a putative class defined as:

> All persons within the United States to whom, July 30, 2014 to April 4,
> 2018, Defendants (or a third party on Defendants' behalf) sent more than
> one text message promoting special pricing or events at XFINITY Live!
> and/or 1100 Social, within any twelve-month period.

80.     As to Count III for violation of the TCPA (the "227(c) Class"), Plaintiff brings this

action on behalf of himself and on behalf of a putative class defined as:

> All persons within the United States whose phone numbers may have been
> registered on the national do-not-call registry and to whom, July 30, 2014
> to April 4, 2018, Defendants (or a third party on Defendants' behalf) sent
> more than one text message promoting special pricing or events at
> XFINITY Live! and/or 1100 Social, within any twelve-month period.

81.     Excluded from the above-defined classes are Defendants, any entity in which

Defendants have a controlling interest, Defendants' officers, directors, and employees,

Defendants' counsel, any persons or entities who have previously settled a TCPA claim with

Defendants, the Court and Court personnel, and Plaintiff's counsel.

82.     **Numerosity – Md. Rule 2-231(a)(1).** Plaintiff does not know how many members

are in the putative class but believes them to be in the tens of thousands, if not more.   On

information and belief, the number of class members is so numerous that their individual joinder

is impracticable.   The precise number of putative class members and their phone numbers can be

obtained from information and records in the possession and control of Defendants or third parties

acting on Defendants' behalf.

83.     **Existence and Predominance of Common Questions of Law and Fact – Md. Rule 2-231(a)(2) and Md. Rule 2-231(b)(3).**   Common questions of law or fact exist as to all members within the putative class and predominate over any questions solely affecting any individual member.   The predominating common legal and factual questions, each of which may also be certified under **Md. Rule 2-231(c)** include the following:

(a) Whether Defendants and/or their agents used an automatic telephone dialing system to send text messages;

(b) Whether the equipment used by Defendants, or a third party on Defendants' behalf, has the capacity to send text messages automatically, *i.e.*, without human intervention;

(c) Whether Defendants' text messages are advertisements;

(d) Whether Defendants' text messages constitute telemarketing;

(e) Whether Defendants require their customers to provide their telephone numbers as a condition of providing goods and services;

(f) Whether Defendants advised Plaintiff and the class members that they intended to send autodialed, advertising, and/or telemarketing text messages to their cellular telephone numbers;

(g) Whether Defendants obtained prior express consent, written or otherwise, to send autodialed, advertising, and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members;

(h) Whether Defendants' text messages were sent for an emergency purpose;

(i) Whether Defendants' text messages were sent willfully or knowingly;

(j) Whether Defendants (i) established and implemented written procedures to comply

with the national do-not-call rules; (ii) trained their personnel in procedures established pursuant to the national do-not-call rules; (iii) maintained a list of telephone numbers Defendants may not contact; (iv) employed a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call or text is made; and (v) maintained records documenting this process;

(k) Whether Defendants (i) established and implemented written procedures to comply with the internal do-not-call rules; (ii) trained their personnel in procedures established pursuant to the internal do-not-call rules; (iii) maintained an internal list of telephone numbers Defendants may not contact; (iv) employed a version of the internal do-not-call list containing numbers updated no more than 30 days prior to the date any call is made; and (v) maintained records documenting this process; and/or

(l) Whether, and to what extent, class members are entitled to equitable relief, including declaratory relief, a preliminary injunction, and/or permanent injunction.

84.   **Typicality – Md. Rule 2-231(a)(3).**  Plaintiff's claims are typical of the claims of the putative classes he seeks to represent.  The factual and legal bases of Defendants' liability to Plaintiff is the same for all putative class members: (i) Defendants violated the TCPA by using an automatic telephone dialing system to send text messages without obtaining prior express written consent in writing or otherwise; (ii) Defendants violated the TCPA by sending multiple promotional text messages without complying with the requirements of 47 C.F.R. § 64.1200(d) and/or 47 U.S.C. § 227(c).

85.   **Adequacy of Representation – Md. Rule 2-231(a)(4).**  Plaintiff will fairly and adequately protect the interests of the putative class members.  Plaintiff has no interests that might conflict with the interests of the putative class members.  Plaintiff will pursue the claims

-17-

vigorously, and Plaintiff has retained counsel competent and experienced in TCPA class actions and complex litigation.

86.     **Superiority – Md. Rule 2-231(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual class members is small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

**COUNT I**
**VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)**

87.     Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

88.     Defendants and/or their agents employed an ATDS to send non-emergency text messages, automatically and without human intervention, to the cellular or wireless telephones of Plaintiff and the members of 227(b)(1)(A)(iii) Class.

89.     Defendants requested, and obtained, the cellular telephone numbers of many of the 227(b)(1)(A)(iii) Class members as a condition to providing their goods and services.

90.     Defendants never obtained prior express consent in writing, or otherwise, advising

-18-

Plaintiff or the members of the 227(b)(1)(A)(iii) Class that they intended to send autodialed, advertising, and/or telemarketing text messages to their cellular or wireless telephones.

91.     As a result of Defendants' conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the 227(b)(1)(A)(iii) Class were harmed and are entitled to a minimum of $500 in damages for each unlawful text message.

92.     Plaintiff and the 227(b)(1)(A)(iii) Class are also entitled to an injunction against future calls.  47 U.S.C. § 227(b)(3).

93.     Defendants' text messages were willful and knowing, in that Defendants knew they were obtaining and storing cellular telephone numbers and employing equipment that would send autodialed, advertising, and/or telemarketing text messages to such numbers; Defendants intended that such equipment would in fact send automated text messages containing the XFINITY Live! and/or 1100 Social brand name and location, and promoting specials and events at XFINITY Live! and/or 1100 Social;  and Defendants knew that they had not obtained prior express consent in writing, or otherwise, from Plaintiff or any of the putative class members to send such text messages.

94.     "Willful … means that the violator knew that he was doing the act in question. … A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 & fn. 86 (May 14, 2007) (citations omitted).

95.     Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the 227(b)(1)(A)(iii) Class and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the 227(b)(1)(A)(iii) Class, seeks

$1,500 per violation of the TCPA; a declaration that Defendants' telemarketing methods, acts and practices herein violate the TCPA, 47 U.S.C. § 227, *et seq.*; an injunction prohibiting Defendants from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

### COUNT II
### VIOLATIONS OF THE TCPA, 47 C.F.R. § 64.1200(d)

96.    Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

97.    Defendants' text messages were made for a commercial purpose, in that they contain the brand name and location of XFINITY Live! and/or 1100 Social, they promote specials and events at XFINITY Live! and/or 1100 Social, and/or they encourage Plaintiff and the putative class members to visit XFINITY Live! and/or 1100 Social with their friends or associates.

98.    Defendants sent more than one advertising and/or telemarketing text message within any twelve-month period to Plaintiff and the 64.1200(d) Class even though Defendants did not first institute procedures for initiating telemarketing calls or text messages that meet (or exceed) the following minimum standards:

- Written policies and procedures, available upon demand, for maintaining a do-not-call list;

- Policies and procedures for the training of personnel engaged in any aspect of telemarketing, on the existence and use of the do-not-call list;

- Policies and procedures for the recording of any request not to receive calls, at the time the request is made, including the subscriber's name, if provided, and telephone number, and honoring any such requests within a reasonable time from the date such request is made.

- Policies and procedures for employing a version of the internal do-not-call list containing numbers updated no more than 30 days prior to the date any call is made;

- Policies and procedures for providing the called party with the name of the

-20-

individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted; and

- Policies and procedures for maintaining records documenting this process, for a period of not less than 5 years.

99.    On information and belief, Defendants are not tax-exempt nonprofit organizations and are therefore required to comply with the minimum standards set forth in 47 C.F.R. § 64.1200(d). *See* 47 C.F.R. § 64.1200(d)(7).

100.    On information and belief, Defendants did not implement any of the minimum standards required by 47 C.F.R. § 1200(d)(1)-(6).

101.    Defendants' text messages do not sufficiently identify the name of the individual caller, and do not provide a (working) telephone number[8] or address at which the person or entity may be contacted.

102.    As a result of Defendants' conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the 64.1200(d) Class were harmed and are entitled to a minimum of $500 in damages for each unlawful text message.

103.    Plaintiff and the 64.1200(d) Class are also entitled to an injunction against future calls.  47 U.S.C. § 227(c)(5).

104.    Defendants' text messages were willful and knowing, in that Defendants knew they were sending advertising and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members without first implementing procedures required by 47 C.F.R. § 64.1200(d), but Defendants chose to send such text messages anyways.

---

[8]    Defendants' text messages do not provide a telephone number, toll-free or otherwise, for consumers and businesses to call in order to opt out of future text messages.  Additionally, if you call the telephone numbers Defendants used to send a text message to Plaintiff cellular telephone number, you are greeted with a message that states, "Unable to complete this call as dialed.  Please check the number and call again."

105.   "Willful ... means that the violator knew that he was doing the act in question. ... A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 & fn. 86 (May 14, 2007) (citations omitted).

106.   Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the 64.1200(d) Class and award $1,500 for each text message sent in violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the 64.1200(d) Class, seeks $1,500 per violation of the TCPA; a declaration that Defendants' telemarketing methods, acts and practices herein violate the TCPA, 47 U.S.C. § 227, *et seq.*; an injunction prohibiting Defendants from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

### COUNT III
### VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2)

107.   Plaintiff restates and incorporates by reference all paragraphs of this Complaint, including all subparagraphs thereof.

108.   Defendants' text messages were made for a commercial purpose, in that they contain the brand name and location of XFINITY Live! and/or 1100 Social, they promote specials and events at XFINITY Live! and/or 1100 Social, and/or they encourage Plaintiff and the putative class members to visit XFINITY Live! and/or 1100 Social with their friends or associates.

109.   Defendants sent more than one advertising and/or telemarketing text message within any twelve-month period to Plaintiff and the 227(c) Class after their telephone numbers had been registered on the national do-not-call registry for more than 31 days.

110.   These advertising and/or telemarketing text messages were made even though

Defendants did not obtain prior express consent in writing, or otherwise, to send such text messages to Plaintiff or the 227(c) Class.

111.    As a result of Defendants' conduct and pursuant to Section 227(c)(5) of the TCPA, Plaintiff and the 227(c) Class were harmed and are entitled to a minimum of $500 in damages for each violation.

112.    Plaintiff and the 227(c) Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(c)(5).

113.    On information and belief, Defendants failed to (i) establish and implement written procedures to comply with the national do-not-call rules; (ii) train their personnel in procedures established pursuant to the national do-not-call rules; (iii) maintain a list of telephone numbers Defendants may not contact; (iv) employ a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and (v) maintain records documenting this process.

114.    On information and belief, Defendants failed to honor the national do-not-call registry, failed to provide "an interactive opt-out mechanism" by which Plaintiff and the 227(c) Class could opt out of future calls, and failed to maintain an "automated, interactive voice- and/or key press-activated opt-out mechanism" by which Plaintiff and the 227(c) Class could call a separate toll-free number and add their numbers to Defendants' internal do-not-call list.

115.    Defendants' text messages were willful and knowing, in that Defendants knew they were sending advertising and/or telemarketing text messages to the cellular telephone numbers of Plaintiff and the class members registered on the national do-not-call list, but Defendants chose to send such text messages anyways.

116.    "Willful … means that the violator knew that he was doing the act in question. …

-23-

A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance." *In re Dynasty Mtg., L.L.C.*, 22 FCC Rcd. 9453, 9470 n. 86 (May 14, 2007) (citations omitted).

117.    Accordingly, the Court should treble the amount of statutory damages available to Plaintiff and the 227(c) Class and award $1,500 for each violation of the TCPA.

WHEREFORE, Plaintiff, individually and on behalf the 227(c) Class, seeks $1,500 per violation of the TCPA; a declaration that Defendants' methods, acts and practices violate the TCPA, 47 U.S.C. § 227, *et seq.*; an injunction prohibiting Defendants from continuing to engage in such unlawful methods, acts, and practices; and attorneys' fees and costs.

Date: July 30, 2018

Stephen J. Nolan
Law Offices of Stephen J. Nolan, Chtd.
Courthouse Commons, Suite A-1
222 Bosley Avenue
Baltimore, Maryland 21204
410-821-8600
410-821-8613 (fax)
steve@sjnolan.com

Of Counsel:[9]
David D. Langfitt, Esquire (*pro hac vice* pending)
Michael B. Leh, Esquire (*pro hac vice* pending)
LOCKS LAW FIRM
601 Walnut Street, Suite 720 East
Philadelphia, PA 19106
215-893-0100 (tel.)
215-893-3444 (fax)
mleh@lockslaw.com
dlangfitt@lockslaw.com

---

[9]    Maryland counsel for Plaintiffs will promptly file a Rule 19-214 Motion For Special Admission of Out-of-State Attorneys Pro Hac Vice.

William C. Kenney    (*pro hac vice* pending)
**BILL KENNEY LAW FIRM, LLC**
1100 Main Street, Suite 1800
Kansas City, MO 64105
(816) 842-2455 (tel.)
(816) 474-8899 (fax)
bkenney@billkenneylaw.com

*and*

Ari N. Rodopoulos    (*pro hac vice* pending)
**WOOD LAW FIRM, LLC**
1100 Main Street, Suite 1800
Kansas City, MO 64105-5171
(816) 256-3582 (tel.)
(816) 337-4243 (fax)
ari@woodlaw.com

*Attorneys for Plaintiffs and all others similarly situated*

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all claims that are so triable.

Stephen J. Nolan
Law Offices of Stephen J. Nolan, Chtd.
Courthouse Commons, Suite A-1
222 Bosley Avenue
Baltimore, Maryland 21204
410-821-8600
410-821-8613 (fax)
steve@sjnolan.com

*Counsel for Plaintiffs and others similarly situated*