**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

THOMAS WILSON, JOHN
GALVAGNO, and ERICA CRUZ,
individually and on behalf of others
similarly situated,

     *Plaintiffs*,

         v.

PL PHASE ONE OPERATIONS L.P.
d/b/a XFINITY Live! Philadelphia and
1100 Social, *et al.*,

     *Defendants.*

Civil Case No. 18-3285

**<u>UNITED STATES OF AMERICA'S
MEMORANDUM OF LAW IN SUPPORT OF THE
CONSTITUTIONALITY OF THE
TELEPHONE CONSUMER PROTECTION ACT OF 1991</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................................1

BACKGROUND ...........................................................................................................................3

ARGUMENT ................................................................................................................................6

I.     The Fourth Circuit's Decision in *AAPC* Resolves Defendants' Contention that the TCPA's Autodialer Provision Contravenes the First Amendment.................................7

II.    The Court Should Resolve All Non-Constitutional Issues Before Reaching The Remaining Constitutional Questions that Have Yet to Be Decided by the Fourth Circuit................................................................................................................................8

III.   The TCPA's Definition of an Autodialer is Not Unconstituitonally Vague. ..............9

IV.   The TCPA's Do-Not-Call-Registry Provisions Are Consistent With the First Amendment..............................................................................................................15

CONCLUSION ...........................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*ACA Int'l v. FCC,*
   885 F.3d 687 (D.C. Cir. 2018) ...................................................................... 9, 13, 14

*Am. Ass'n of Political Consultants, Inc. v. FCC,*
   923 F.3d 159 (4th Cir. 2019) ...................................................................... 1, 3, 7, 18

*Am. Commc'ns Ass'n v. Douds,*
   339 U.S. 382 (1950) ........................................................................................... 14

*Brickman v. Facebook, Inc.,*
   230 F. Supp. 3d 1036 (N.D. Cal. 2017), *granting certification of appealability,*
   2017 WL 1508719 (N.D. Cal. Apr. 27, 2017) .......................................................... 19

*Cahaly v. LaRosa,*
   796 F.3d 399 (4th Cir. 2015) ............................................................................. 19, 20

*Carey v. Brown,*
   447 U.S. 455 (1980) ........................................................................................... 19

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
   447 U.S. 557 (1980) ........................................................................................... 17

*Contest Promotions, LLC v. City & Cty. of S.F.,*
   874 F.3d 597 (9th Cir. 2017) ................................................................................ 17

*Dominguez on Behalf of Himself v. Yahoo, Inc.,*
   894 F.3d 116 (3d Cir. 2018) ............................................................................. 13, 14

*Duguid v. Facebook, Inc.,*
   926 F.3d 1146 (9th Cir. 2019) .............................................................................. 8, 14

*FCC v. Fox Television Stations, Inc.,*
   567 U.S. 239 (2012) ........................................................................................... 13

*Frisby v. Schultz,*
   487 U.S. 474 (1988) ........................................................................................... 19

*Gallion v. Charter Commc'ns, Inc.,*
   287 F. Supp. 3d 920 (C.D. Cal. 2018), *aff'd on other grounds,*
   No. 18-55667, 2019 WL 2913970 (9th Cir. July 8, 2019) ............................................ 19

*Gallion v. United States,*
   ---F. App'x---, 2019 WL 2913970 (9th Cir. July 8, 2019) ..................................... 8, 18, 19

*Grayned v. City of Rockford,*
    408 U.S. 104 (1972)...................................................................................................................14

*Greenley v. Laborers' Int'l Union of N. Am.,*
    271 F. Supp. 3d 1128 (D. Minn. 2017) ............................................................................ 18, 19

*Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Envtl. Control,*
    317 F.3d 357 (4th Cir. 2002)....................................................................................................15

*Gulf Oil Co. v. Bernard,*
    452 U.S. 89 (1981).......................................................................................................................8

*Hagans v. Lavine,*
    415 U.S. 528 (1974).....................................................................................................................2

*Hill v. Colorado,*
    530 U.S. 703 (2000)...................................................................................................................10

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010).......................................................................................................................12

*Hutchinson v. Proxmire,*
    443 U.S. 111 (1979).....................................................................................................................8

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
    18 F.C.C. Rcd. 14014 (July 3, 2003) .........................................................................................4

*Joffe v. Acacia Mortg. Corp.,*
    121 P.3d 831 (Ariz. Ct. App. 2005) ..........................................................................................3

*Manning v. Caldwell for the City of Roanoake,*
    ---F.3d---, 2019 WL 3139408 (4th Cir. July 16, 2019) ..........................................12, 13, 15

*Marks v. Crunch San Diego, LLC,*
    904 F.3d 1041 (9th Cir. 2018), *cert denied*, 139 S. Ct. 1289 (2019)...................................11, 14

*Martin v. Lloyd,*
    700 F.3d 132 (4th Cir. 2012).....................................................................................................12

*Maryland v. Universal Elections, Inc.,*
    729 F.3d 370 (4th Cir. 2013)..............................................................................................7, 8, 19

*Mejia v. Time Warner Cable, Inc.,*
    15-cv-6445 (JPO), 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) .........................................19

*Mey v. Venture Data, LLC,*
    245 F. Supp. 3d 771 (N.D.W. Va. 2017)...................................................................................3

*Mims v. Arrow Fin. Servs., LLC,*
    565 U.S. 368 (2012)...................................................................................................................3

*Moser v. FCC,*
    46 F.3d 970 (9th Cir. 1995).....................................................................................................18

*Nat'l Fed. of the Blind v. FTC,*
    420 F.3d 331 (4th Cir. 2005)............................................................................................ 19, 20

*Reed v. Town of Gilbert,*
    135 S. Ct. 2218 (2015) .....................................................................................................1, 16, 17

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009)......................................................................................................4

*Schleifer v. City of Charlottesville,*
    159 F.3d 843 (4th Cir. 1998)...................................................................................................10

*Susinno v. Work Out World, Inc.,*
    862 F.3d 346 (3d Cir. 2017).....................................................................................................11

*Turner Broad. Sys. v. FCC,*
    512 U.S. 622 (1994).................................................................................................................17

*United States v. Edge Broad. Co.,*
    509 U.S. 418 (1993).................................................................................................................21

*United States v. Raines,*
    362 U.S. 17 (1960)...................................................................................................................10

*United States v. Saunders,*
    828 F.3d 198 (4th Cir. 2016).............................................................................................10, 14, 15

*United States v. Shrader,*
    675 F.3d 300 (4th Cir. 2012)...................................................................................................11

*United States v. Whorley,*
    550 F.3d 326 (4th Cir. 2008)............................................................................................ 10, 15

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982).................................................................................................................15

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989)............................................................................................................14, 17

**STATUTES**

28 U.S.C. § 2342.........................................................................................................................18

iv

47 U.S.C. § 227 *et seq*........................................................................................................................1

47 U.S.C. § 227 ............................................................................................................................*passim*

Telephone Consumer Protection Act of 1991,
    Pub. L. No. 102–243, 105 Stat. 2394 ..................................................................................20

Bipartisan Budget Act of 2015,
    Pub. L. No. 114-74, 129 Stat. 584..........................................................................................4

## REGULATIONS

47 C.F.R. § 64.1200............................................................................................................*passim*

## OTHER AUTHORITIES

137 Cong. Rec. 30,821 (1991) ............................................................................................3

S. Hrg. 102-918 (Oct. 10, 1991) .........................................................................................20

**INTRODUCTION**

Plaintiffs Thomas Wilson, John Galvagno, and Erica Cruz ("Plaintiffs") have filed this action alleging that Defendants sent or caused to be sent text messages to Plaintiffs' telephone numbers, in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 *et seq.* ("TCPA").  As relevant here, § 227(b)(1)(A)(iii) of the TCPA (the "autodialer provision") prohibits the use of an automated telephone dialing system ("ATDS") to make a call or send a text message to a cell phone user without the user's prior express consent, unless the call or message is initiated for an emergency purpose or to collect a debt owed to or guaranteed by the United States.  The TCPA also authorizes the Federal Communications Commission ("FCC") to regulate telephone solicitation, including by establishing a national do-not-call registry.  *See* 47 U.S.C. § 227(c).

Defendants have filed a motion to dismiss contending that in light of the Supreme Court's decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), the TCPA's autodialer provision violates the First Amendment.  Specifically, Defendants contend that the provision is a speaker- and content-based regulation of speech that fails to survive strict scrutiny.  Defendants also contend that the TCPA's definition of an autodialer is impermissibly vague, in violation of the Due Process Clause of the Fifth Amendment.  Finally, Defendants challenge the TCPA's provisions authorizing the regulation of telephone solicitation, which exclude calls from nonprofit organizations, as content-based restrictions on speech that violate the First Amendment.

After Defendants filed their motion to dismiss, but before the United States intervened in this action, the Fourth Circuit issued an opinion holding the government-debt exception unconstitutional but severable from the remainder of the TCPA's autodialer provision, 47 U.S.C. § 227(b)(1)(A)(iii).  *See Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) ("*AAPC*").  Absent the government-debt exception, the Fourth Circuit made clear that the TCPA's autodialer provision

1

remains consistent with the First Amendment. That decision controls the primary constitutional question raised in this case.

Defendants' remaining constitutional challenges are a void-for-vagueness challenge to the TCPA's definition of an automated telephone dialing system, and a First Amendment challenge to the TCPA's definition of "telephone solicitation." Before reaching those arguments, however, this Court should resolve all nonconstitutional issues presented by Defendants' motion. Defendants raise a number of nonconstitutional grounds for dismissal, including that Plaintiff has failed to allege a violation of the TCPA's autodialer provision, and that Defendants' alleged messages fall within a safe-harbor for the telephone solicitation provisions. Though the United States takes no position on those claims, their resolution may obviate the need to reach any remaining constitutional issue. The Court "should not decide federal constitutional questions where a dispositive nonconstitutional ground is available." *Hagans v. Lavine*, 415 U.S. 528, 547 (1974).

If the Court does reach Defendants' two remaining constitutional challenges, it should conclude that they are without merit. Defendants have not plausibly established that the statutory definition of an "automated telephone dialing system" for purposes of the TCPA's autodialer restriction is void for vagueness; indeed, the myriad decisions that have construed and applied that definition suggest otherwise. This Court should reject Defendants' invitation to be the first to hold that the TCPA's longstanding definition of an autodialer – which has been in effect for nearly three decades – is so vague that it violates the Due Process Clause of the Fifth Amendment.

The Court should also decline to become the first to find that the TCPA's exclusion of calls made by nonprofit organizations from its definition of "telephone solicitation" renders the provisions authorizing the FCC to regulate telephone solicitation unconstitutional. That exclusion is content-neutral on its face and, in any event, is tailored to the Government's compelling interest in protecting consumers' personal and residential privacy.

2

Accordingly, the Court should dismiss Defendants' remaining constitutional challenges and should conclude that the TCPA, including the autodialer provision without the government-debt exception, is fully constitutional.[1]

## BACKGROUND

"Voluminous consumer complaints about abuses of telephone technology — for example, computerized calls dispatched to private homes — prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012). The ubiquity of cell phones only aggravates such problems. "People keep their cellular phones on their person at nearly all times: in pockets, purses, and attached to belts. Unlike other modes of communication, the telephone commands our instant attention." *Joffe v. Acacia Mortg. Corp.*, 121 P.3d 831, 842 (Ariz. Ct. App. 2005); *see also Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 781 (N.D.W. Va. 2017) ("When it enacted the TCPA, Congress repeatedly emphasized the nuisance aspect of robocalls, showing that it considered the interruptions that they cause and the time they cause consumers to waste to be one of the harms it sought to remedy. . . . 'They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed.'" (quoting 137 Cong. Rec. 30,821-30,822 (1991) (testimony of Sen. Hollings))). As pertinent here, the statute makes it unlawful

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

---

[1] Although the Fourth Circuit correctly held that the government-debt exception is severable, the United States believes that the Court of Appeals erred in holding the exception unconstitutional. The United States recently petitioned for rehearing en banc in *AAPC*. *See* Pet. for Reh'g En Banc, *Am. Assoc. of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (No. 18-1588). This petition was denied, *see* ECF No. 44, and the United States is now determining whether to file a petition for certiorari to the Supreme Court in *American Association of Political Consultants*.

47 U.S.C. § 227(b)(1)(A)(iii).

Congress added the final clause of this autodialer provision, the government-debt exception, in November 2015 as part of the Bipartisan Budget Act of 2015. *See* Pub. L. No. 114-74, § 301, 129 Stat. 584, 588. The statute has long been interpreted to apply to both phone calls and text messages. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (July 3, 2003); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 949, 952 (9th Cir. 2009).

The TCPA also requires the FCC to prescribe regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1)-(2), with the exception of calls made by a "tax exempt nonprofit organization." *Id.* § 227(a)(4)(C). The FCC has implemented regulations pursuant to this authority, including a prohibition on making telephone solicitations without first instituting policies and procedures that meet "minimum standards" including that the telemarketer maintains "a written policy, available upon demand, for maintaining a do-not-call list" internally. *See* 47 C.F.R. § 64.1200(d). Separately, the FCC has implemented regulations prohibiting telephone solicitations to any number registered on the national do-not-call registry. *See* 47 C.F.R. § 64.1200(c)(2). An individual who receives more than one call within a year in violation of those regulations may sue for damages, but the caller may assert an affirmative defense by demonstrating that it has implemented "reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations." 47 U.S.C. § 227(c)(5)[2]; *see also* 47 C.F.R. § 64.1200(c)(2)(i).

Plaintiffs bring this putative class action for damages under Section 227(b)(1)(A)(iii) and

---

[2] The private right of action for Section 227(c)(5) is different (and more stringent) than the private right of action for Plaintiffs' claim brought under Section 227(b). For example, an individual may sue under Section 227(b) after receiving a single, illegal call, and Section 227(b) does not allow the affirmative defense contained in Section 227(c)(5). *Compare* 47 U.S.C. § 227(b)(3), *with id.* § 227(c)(5).

Section 227(c) of the TCPA, and under 47 C.F.R. §§ 64.1200(c) and (d).  *See* Compl., ECF No. 1-3. Specifically, Plaintiffs allege that Defendants sent unsolicited text messages to their cell phones – "either directly or through a third-party telemarketer," *id.* ¶ 10 – using "equipment" that "not only ha[s] the capacity to store or produce telephone numbers to be called using a random or sequential number generator (and to dial such numbers), but was programmed to sequentially or randomly access stored telephone numbers to automatically send text messages to those numbers." *Id.* ¶ 38.  Plaintiffs assert that Defendants are "aware that the above-described text messages are being sent to consumers and businesses without their prior express consent . . . but Defendant[s] willfully continue[] to send them anyways."  *Id.* ¶ 45.  In a separate claim, Plaintiffs allege that Defendants' "text messages are advertisements and/or constitute telemarketing as defined by the TCPA" and therefore violate 47 C.F.R. § 64.1200(d), because Defendants did not maintain the requisite policies and procedures for such telemarketing messages.  *Id.* ¶ 40.  And finally, in a third claim, Plaintiffs allege that they and other putative class members "have their telephone numbers registered with the national do-not-call registry," so telemarketing calls made to them violate 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2). *Id.* ¶ 43.  Plaintiffs seek to represent three classes—one for each claim brought under Section 227(b)(1)(A)(iii) (the autodialer restriction), 47 C.F.R. § 64.1200(d) (the telemarketing restriction), and Section 227(c) (the national do-not-call registry).  *See id.* ¶¶ 78-80.

Defendants have moved to dismiss the Complaint on both constitutional and non-constitutional grounds.  *See* Defendants' Motion to Dismiss, ECF No. 32-1 (hereinafter "Defs. Mot."). With respect to the constitutional grounds, Defendants contend that the autodialer provision is a content-based restriction on speech that cannot survive strict scrutiny.  *See id.* at 10-13, 15-17. Separately, Defendants contend that the autodialer provision violates the Due Process Clause of the Fifth Amendment because it is unconstitutionally vague.  *Id.* at 17-20.  And, finally, Defendants assert that the TCPA's telephone solicitation definition discriminates in favor of certain speakers and fails

strict scrutiny.  *Id.* at 13-15, 15-17.

On January 28, 2019, Defendants filed a Notice of Constitutional Question.  *See* ECF No. 32-2.  On February 26, 2019, the United States acknowledged the constitutional question.  *See* ECF No. 37.  On May 22, 2019, just after the Fourth Circuit decided *American Association of Political Consultants v. FCC*, the United States filed a consent motion requesting additional time to decide whether to intervene.  *See* ECF No. 48.  The Court granted that motion, and ordered the United States to intervene and file its brief in support of the statute by July 22, 2019.  *See* Minute Order of May 23, 2019.

## ARGUMENT

After the Fourth Circuit's recent decision in *AAPC*, Defendants' primary constitutional contention – a First Amendment challenge to the TCPA's autodialer provision – is foreclosed.  The Fourth Circuit has held that the government-debt exception to that provision, which it found unconstitutional, is nonetheless severable, leaving the remaining provision constitutional under the First Amendment.  This means that the Court of Appeals has already adjudicated a core portion of Defendants' constitutional challenges.

Before reaching Defendants' remaining constitutional challenges – those that were not addressed by *AAPC* – the Court should first resolve the various non-constitutional bases for dismissal presented in Defendants' motion.  Should it find none of those arguments meritorious, and reach the remaining constitutional arguments in Defendants' motion, the Court should reject them.  The TCPA's definition of an autodialer is not unconstitutionally vague; it uses words of common understanding, as demonstrated by recent applications of it in decisions of multiple courts of appeals.  Separately, the exclusion of nonprofit organizations from the provisions of the TCPA authorizing the FCC to regulate telephone solicitation does not render those provisions content based.  Even if it did, however, the provisions readily satisfy the applicable level of review.  Consequently, the United States respectfully submits that the Court should uphold the TCPA as constitutional.

I.      **The Fourth Circuit's Decision in *AAPC* Resolves Defendants' Contention that the TCPA's Autodialer Provision Contravenes the First Amendment.**

Defendants' motion to dismiss was filed before the Fourth Circuit decided *AAPC*, which resolves one of Defendants' three constitutional contentions.   In *American Association of Political Consultants, Inc. v. Federal Communications Commission*, 923 F.3d 159 (4th Cir. 2019), the Fourth Circuit held that the government-debt exception to the TCPA's autodialer provision rendered that provision content-based, and it then determined that the government-debt exception failed strict scrutiny.   *Id.* at 161.   However, the Fourth Circuit held the government-debt exception was severable, meaning that the remainder of the autodialer provision was constitutional.   *Id.* at 171 ("We are also satisfied that a severance of the debt-collection exemption will not undermine the automated call ban. . . . Plaintiffs simply cannot show that excising the debt-collection exemption will hamper the function of the ban.").

Accordingly, *AAPC* resolves Defendants' contention that the TCPA is content based as a result of the government-debt exception, as well as their contention that the exception does not satisfy strict scrutiny, *see* Defs. Mot. at 10-13; the Fourth Circuit agreed with Defendants on both issues.   *See AAPC*, 923 F.3d at 166-170.   However, the Fourth Circuit held that the government-debt exception is severable, and thereby confirmed that the pre-amendment autodialer provision remains a content-neutral, constitutional restriction on speech.   *Id.* at 170-172; *id.* at 171 ("By severing the flawed portion of a statute, the court can limit the impact of its ruling of constitutional infirmity. . . .").   As a result, after *AAPC*, the remainder of the TCPA's autodialer provision is a content-neutral restriction on speech that satisfies intermediate scrutiny.[3]   Because that holding is binding on this district court,

---

[3] If there were any doubt about whether the post-severance autodialer provision is a content-neutral restriction speech that satisfies intermediate scrutiny – which there should not be, after *AAPC* – the Court need only look to the Fourth Circuit's decision in a case examining another provision of the TCPA, which requires speakers using robocalls to disclose their identities.   *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 376 (4th Cir. 2013) ("This identity disclosure requirement applies regardless of the content of the message that is relayed to the recipient.   [47 U.S.C.] § 227(d)'s requirements do not place any greater restriction on a particular group of people or form of speech,

Defendants' First Amendment challenge to the autodialer provision must fail, as the post-severance autodialer provision is constitutional.  *See also Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1157 (9th Cir. 2019) ("Excising the debt-collection exception preserves the fundamental purpose of the TCPA and leaves us with the same content-neutral TCPA that we upheld—in a manner consistent with *Reed*—" twice before.) [4]; *Gallion v. United States*, ---F. App'x---, 2019 WL 2913970, at *1 (9th Cir. July 8, 2019) ("Because we conclude in *Duguid* that the unconstitutional debt-collection exception is severable, the TCPA is restored to its pre-2015 status and is constitutional under our precedents.").

## II.   The Court Should Resolve All Non-Constitutional Issues Before Reaching The Remaining Constitutional Questions that Have Yet to Be Decided by the Fourth Circuit.

This Court should not address Defendants' remaining constitutional challenges to the TCPA – those not addressed by the Fourth Circuit in *AAPC* – until it resolves all other non-constitutional issues presented in Defendants' motion to dismiss.  "[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); *see also Hutchinson v. Proxmire*, 443 U.S. 111, 122 (1979) ("Our practice is to avoid reaching constitutional questions if a dispositive nonconstitutional ground is available.").

---

and do not burden appellants—or entities engaging in political speech—any more than any other person or group placing robocalls.  The district court properly determined that the TCPA is a content-neutral law to which intermediate scrutiny must be applied."); *id.* at 376-77 ("The TCPA protects residential privacy—a government interest articulated in the legislative history of the Act" and "do[es] not burden substantially more speech than is necessary to protect those interests.").  Applying that same analysis to the post-severance autodialer provision of the TCPA compels the conclusion that it, too, is consistent with the First Amendment.

[4] The Fourth Circuit's *AAPC* decision was largely tracked by the Ninth Circuit in *Duguid*.  *See Duguid*, 926 F.3d at 1149 ("As to the constitutional question, we join the Fourth Circuit and hold that a 2015 amendment to the TCPA, which excepts calls 'made solely to collect a debt owed to or guaranteed by the United States,' is content-based and incompatible with the First Amendment.  But rather than toss out the entire TCPA—a longstanding and otherwise constitutional guardian of consumer privacy—we sever the newly appended 'debt-collection exception' as an unconstitutional restriction on speech.")(internal citation omitted).  *Gallion*, issued by the Ninth Circuit just a few weeks after *Duguid*, reached the same conclusion.

In addition to their constitutional challenges, Defendants raise a slate of other arguments in favor of dismissal. Namely, they contend that Plaintiffs have failed to state a claim against Defendants because they impermissibly rely on group pleading, *see* Defs. Mot. at 20-21; Plaintiffs have failed to allege that these Defendants, as opposed to another entity, are liable for the conduct alleged, *see id.* at 21-23; Plaintiffs have not alleged that Defendants' messages were sent using an ATDS, *see id.* at 24-26; Plaintiffs do not have a cause of action under the FCC's do-not-call regulations, *see id.* at 26-27; and Defendants are shielded from liability because of their established business relationships with Plaintiffs, *see id.* at 27-28. To avoid unnecessary constitutional adjudication, the Court should first address these issues before reaching Defendants' remaining constitutional challenges.[5]

### III.   The TCPA's Definition of an Autodialer is Not Unconstituitonally Vague.

The first of Defendants' two constitutional challenges that were not resolved by *AAPC* asserts that the definition of an ATDS, on which the autodialer provision relies, is unconstitutionally vague. *See* Defs. Mot. at 17-20. The TCPA defines an ATDS as follows:

> (1) The term "automatic telephone dialing system" means equipment which has the capacity—
>    (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>    (B) to dial such numbers.

47 U.S.C. § 227(a). Although the FCC in 2015 issued an order that sought to clarify, among other things, the types of devices that qualify as an ATDS, *see ACA Int'l v. FCC*, 885 F.3d 687, 692 (D.C. Cir. 2018), the D.C. Circuit vacated that order after determining that the FCC's interpretation of an ATDS was "impermissible" under the Administrative Procedure Act. *Id.* at 697. There currently is no interpretive rule providing additional guidance as to what qualifies as an ATDS.

---

[5] The United States has intervened solely for the purpose of defending the constitutionality of the TCPA and therefore takes no position on the merits of these issues.

"A statute is unconstitutionally vague if it (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Saunders*, 828 F.3d 198, 206 (4th Cir. 2016) (citation omitted).   Defendants argue that the TCPA is void for vagueness because it fails to satisfy the first criterion—that is, "it fails to give a person of ordinary intelligence adequate notice regarding precisely what equipment qualifies as an ATDS."  Defs. Mot. at 18.  Defendants raise both a facial void-for-vagueness challenge and an as-applied challenge, contending in support of the latter that "no reasonable person in Defendants' position could have reasonably thought that the alleged text messages" – sent using "a web-based platform that could not send text messages without manual input from a human being" – "could have run afoul of the statute[.]"  *Id.* at 19.  Neither of these challenges has merit.

First, in the Fourth Circuit, facial void-for-vagueness challenges are disfavored.  *See Schleifer by Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998) ("Striking down ordinances (or exceptions to the same) as facially void for vagueness is a disfavored judicial exercise. . . .  [T]here will be hard cases under any law. . . [and i]t is preferable for courts to demonstrate restraint by entertaining challenges to applications of a law as those challenges arise."); *cf. Hill v. Colorado*, 530 U.S. 703, 733 (2000).  Here, Defendants do not attempt to demonstrate that the TCPA's ATDS definition is invalid "in the vast majority of its intended applications," *Hill*, 530 U.S. at 733 (citing *United States v. Raines*, 362 U.S. 17, 23 (1960)).  The fact that some newer technologies – including, potentially, the technology allegedly used by Defendants in this case – may present difficult questions about whether the autodialer restriction applies does not mean that the ordinary application of the restriction is unclear in the majority of its applications.  *See, e.g.*, *United States v. Whorley*, 550 F.3d 326, 334 (4th Cir. 2008) (even if defendant "is probably correct in observing that evolving computer technology will constantly change the ways in which" a statutory provision applies to the facts of a case, "and that those changes

might, depending on the technology, present serious questions as to whether" the statute has been

violated in a particular instance, "the facts of each case will require a jury to determine whether an

individual has, in fact," violated the statute, but "the need for such a determination by the jury does

not suggest that a statute is too vague").  Accordingly, Defendants have not plausibly established that

the TCPA's definition of an ATDS is unconstitutionally vague as a facial matter.

Second, the TCPA's autodialer provision uses terms of common understanding to delineate

broad characteristics of the equipment covered by that provision.  As the Ninth Circuit recently

explained,

> This language [in the ATDS definition] established Congress's intent
> to regulate equipment that is 'automatic,' and that has 'the capacity' to
> function in two specified ways: 'to store or produce telephone
> numbers to be called, using a random or sequential number generator'
> and 'to dial' those telephone numbers.  Although the TCPA has been
> amended several times since its original enactment, Congress has never
> revised the definition of an ATDS.  Therefore, Congress's decision to
> regulate only those devices which have the aforementioned functions,
> capacity, and ability to function automatically remains unchanged.

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1044-45 (9th Cir. 2018) (citation omitted), *cert denied*,

139 S. Ct. 1289 (2019).  The TCPA thus establishes specific criteria for autodialers to allow regulated

entities, prospective plaintiffs, and courts to assess whether new technology might qualify as an ATDS.

*See United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012) ("[W]e cannot . . . throw[] up our hands

and declar[e] a statute vague simply because it does not include the most elaborate or the most specific

definitions possible.  The test for vagueness is necessarily a practical rather than hypertechnical one,

and . . . we may resort to ordinary meaning and common sense[.]" (citation omitted)); *see also Susinno*

*v. Work Out World, Inc.*, 862 F.3d 346, 349 n.1 (3d Cir. 2017) (stating that "we would not find the TCPA

void for vagueness where, as here, it neither 'fails to provide people of ordinary intelligence a

reasonable opportunity to understand what conduct it prohibits,' nor 'authorizes or even encourages

arbitrary and discriminatory enforcement.'" (citation omitted)).

Moreover, the alleged vagueness here arises from the definition of a technical device, which is not typically the type of term that gives rise to a successful vagueness challenge.  Courts find statutes void for vagueness primarily when they employ words or phrases that necessarily require subjective judgments.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 20-21 (2010) (noting "the statutory terms at issue here are quite different from the sorts of terms that we have previously declared to be vague. We have in the past struck down statutes that tied criminal culpability to whether the defendant's conduct was 'annoying' or 'indecent'—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." (citation omitted)); *see also Manning v. Caldwell for the City of Roanoake*, ---F.3d---, 2019 WL 3139408, at *6-*8 (4th Cir. July 16, 2019) (en banc) (finding criminal statute's use of term 'habitual drunkard' unconstitutionally vague where statute did not provide "any guidelines or standards regarding who qualifies as an 'habitual drunkard,'" and "plainly, the term 'habitual drunkard' itself does not assist in clearly articulating the proscriptions of the ordinance," so "the determination whether a certain person qualifies as an 'habitual drunkard' is left to the subjective view of judges and law enforcement officials").  The ATDS definition is qualitatively different – and more specific – than these types of terms.

Defendants cite recent cases after *ACA International* indicating that there is disagreement among judges about whether various types of equipment – in particular, predictive dialers – qualify as an ATDS under the statute, *see* Defs. Mot. at 19 n.12, but "difference of opinion amongst judges or law enforcement does not make a statute unconstitutionally vague."  *Martin v. Lloyd*, 700 F.3d 132, 137 (4th Cir. 2012).  As the Fourth Circuit has explained, "[t]here will be gray areas in the interpretation of many statutes, and sometimes there will be inconsistency in the outcomes of marginal cases, but this is part and parcel of the process of statutory construction that is integral to our common law legal system."  *Id.*  And many of the cases cited by Defendants demonstrate that courts can, and do, resolve questions about whether a particular device is covered by the statutory definition of an ATDS without

suggesting that the definition is vague—let alone unconstitutionally so. *See, e.g., Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) ("In light of the D.C. Circuit's holding [in *ACA International*], we interpret the statutory definition of an autodialer as we did prior to the issuance of [FCC's] 2015 Declaratory Ruling.") (cited at Defs. Mot. at 19 n. 12).  These cases illustrate that, even if the statutory definition has some degree of ambiguity at the margins, courts generally have no difficulty determining whether it covers the technology allegedly used by defendants in TCPA cases. *Cf. Manning*, 2019 WL 3139408, at *6 (noting that "the few Virginia cases applying the challenged scheme have not provided a limiting construction of the phrase ['habitual drunkard'] to satisfy the fair notice requirement").

Defendants also contend that "the FCC's past interpretations of the TCPA have resulted in uncertainty and failed to provide meaningful guidance" about the meaning of an ATDS.  Defs. Mot. at 18.  They cite the D.C. Circuit's decision in *ACA International v. FCC* for the proposition that, as a result of the FCC's successive TCPA orders, regulated entities "are left in a significant fog of uncertainty about how to determine if a device is an ATDS."  885 F.3d at 703; *see* Defs. Mot. at 19. Yet *ACA International* held that the FCC's rulings – not the statute itself – generated that uncertainty, and it vacated the rulings that were the source of the confusion.  The statutory definition of an ATDS does raise questions, *see ACA Int'l*, 885 F.3d at 701, but the D.C. Circuit never suggested that those questions were so substantial as to render a person of ordinary intelligence unable to understand the provision.[6]  Moreover, after the D.C. Circuit struck down the FCC's interpretation of an ATDS, the Ninth and Third Circuits had no trouble applying the standard tools of statutory interpretation to

---

[6] Defendants do not contend that this is a case in which the FCC took one position in one order and another, directly contrary, position in another order, without providing notice of a change. *Cf. FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  Defendants contend that the FCC's orders generated "uncertainty," *see* Defs. Mot. at 18, but not that the FCC changed course without providing adequate notice.

arrive at a workable definition of an ATDS, underscoring that the definition is not vague. *See Yahoo, Inc.*, 894 F.3d at 119; *Marks*, 904 F.3d at 1049-52 ("Because the statutory language is ambiguous, we look at the context and the structure of the statutory scheme."); *Duguid*, 926 F.3d at 1150 (confirming *Marks*'s construction of the ATDS definition "clarif[ied] any ambiguity" about the provision after *ACA International* "wipe[d] the definitional slate clean"). Indeed, no court of appeals has suggested that the fact that "[t]he TCPA vests the [Federal Communications] Commission with responsibility to promulgate regulations implementing the Act's requirements," renders the statutory language itself unconstitutionally vague. *ACA Int'l*, 885 F.3d at 693 (citing 47 U.S.C. § 227(b)(2)).

Moreover, to the extent that Defendants' challenge rests on the fact that the FCC does not currently have a regulation interpreting the statutory definition, it is important to note that the TCPA was in effect for more than ten years with nothing more than the statutory definition to guide enforcement, and to the Government's knowledge, no court ever seriously questioned the ATDS definition on vagueness grounds during that period. *See Marks*, 904 F.3d at 1045 (indicating that from the statute's promulgation in 1991 until 2003, no FCC order dealt with the definition of an ATDS except for a regulation parroting the language of the statute); *see also Saunders*, 828 F.3d at 207 (noting, in rejecting vagueness challenge, that the statute's core "prohibition . . . has been on the books and readily comprehensible to those in the . . . industry (much less the general population) for over a quarter-century").

At bottom, Defendants' vagueness argument amounts to a complaint that the statute does not precisely identify all devices that qualify as an ATDS, but such precision is not required to avoid unconstitutional vagueness. *See, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 112 n.15 (1972) (rejecting vagueness challenge and noting "[i]t will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question'")(quoting *Am. Commc'ns Ass'n v. Douds*, 339 U.S. 382, 412 (1950)); *Ward v. Rock Against Racism*, 491 U.S. 781, 794

(1989) ("[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."); *Whorley*, 550 F.3d at 334 ("A statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds." (citation omitted)).

Although the TCPA's autodialer provision may "fall short of mathematical precision," there is no doubt that "a reasonable, person, reading the [provision] in its entirety and in the context of [the] statute[]" would understand "what is required." *Greenville Women's Clinic v. Comm'r, S.C. Dep't of Health & Envtl. Control*, 317 F.3d 357, 366 (4th Cir. 2002).[7] No court has held or even suggested that the TCPA's autodialer definition is unconstitutionally vague, and Defendants have not provided this Court with a compelling reason to become the first to do so.

## IV. The TCPA's Do-Not-Call-Registry Provisions Are Consistent With the First Amendment.

Defendants' third and final constitutional contention pertains to Plaintiffs' national do-not-call-registry and telemarketing restriction claims. By way of reminder, the national do-not-call registry claim alleges that Defendants sent telemarketing messages to Plaintiffs despite their presence on the national do-not-call registry, in violation of 47 U.S.C. §§ 227(c)(1)-(3) and 47 C.F.R. § 64.1200(c)(2); the telemarketing claim alleges that Defendants sent unsolicited telemarketing messages without first establishing and complying with procedures – including internal do-not-call policies – for telemarketing, in violation of 47 C.F.R. § 64.1200(d). Defendants argue that "the statute and

---

[7] It also bears "not[ing] that the penalties [imposed by the statute] are civil rather than criminal," *Greenville Women's Clinic*, 317 F.3d at 367, and that the TCPA imposes a scienter requirement for the greater civil penalties—both of which are statutory characteristics that courts have typically considered less likely to render the statute unconstitutionally vague. *Saunders*, 828 F.3d at 207; *see also Manning*, 2019 WL 3139408, at *5 ("The degree of vagueness tolerated in a law depends in part on the type of statute. Less clarity is required in purely civil statutes because the 'consequences of imprecision are qualitatively less severe.'" (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982)).

implementing regulations that form the basis of" the national do-not-call-registry claim "unambiguously exclude nonprofit speakers from liability under these provisions." *See* Defs. Mot. at 14-15. Defendants argue that the relevant TCPA provisions, with authorize the FCC to regulate "telephone solicitation," are subject to strict scrutiny because they exclude calls made "by a tax exempt nonprofit organization," rendering the "telephone solicitation" definition speaker based and subject to strict scrutiny. *Id.* at 14 (citing 47 U.S.C. § 227(a)(4)). Defendants also contend that the FCC's telephone solicitation regulations – which involve internal do-not-call procedures – contain a similar, speaker-based carve-out for nonprofit organizations. Because the bases of both claims exclude one type of speaker – tax exempt nonprofit organizations – Defendants assert that the statutory provision containing that exclusion is subject to, and cannot survive, strict scrutiny. These arguments are meritless.

First, the TCPA's definition of "telephone solicitation" is content neutral on its face. *See* 47 U.S.C. § 227(a)(4) ("The term 'telephone solicitation' . . . does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization."). The definition does not "appl[y] to particular speech because of the topic discussed or the idea or message expressed," *Reed*, 135 S. Ct. at 2227; rather, it turns solely on the type of organization promulgating the speech—in this case, tax exempt nonprofit organizations. Although Defendants state that "preference for . . . non-profits 'reflects a content preference,'" Defs. Mot. at 14 (quoting *Reed*, 135 S. Ct. at 2230), they neither explain nor demonstrate how that is the case. Instead, Defendants lament that "communications with a business's customers concerning events that these individuals previously participated in" could not be made to an individual on the national do-not-call registry, *see id.*, but the exact same communication – "concerning events that these individuals previously participated in" – could be made by a nonprofit to that same individual. *Id.* This argument demonstrates, however, that

16

the "telephone solicitation" definition is *not* content based, because two calls made with identical content are subject to different requirements if made by a nonprofit organization or a for-profit organization. And neither the national do-not-call registry, 47 C.F.R. § 64.1200(c)(2), nor the requirement of internal do-not-call policies for telemarketing solicitation, *id.* § 64.1200(d), in any way evinces a preference for charitable or philanthropic communications, or any other content that might be generated by nonprofit organizations. Thus, because Defendants have not demonstrated any potential for content preference in the national do-not-call registry's and telephone solicitation regulation's exclusion of nonprofits, strict scrutiny is not warranted. *See Reed*, 135 S. Ct. at 2230 (strict scrutiny is warranted only "when the legislature's speaker preference reflects a content preference" (quoting *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 658 (1994))); *see also Turner*, 512 U.S. at 657 ("To the extent appellants' argument rests on the view that all regulations distinguishing between speakers warrant strict scrutiny, it is mistaken." (citation omitted)). Because the statutory provision carving out non-profit organizations from the provisions authorizing the FCC to create do-not-call registries and to otherwise regulate telephone solicitation is content neutral on its face, and because its differential treatment may be "justified without reference to the content of the speech," *Reed*, 135 S. Ct. at 2229 (quoting *Ward*, 491 U.S. at 791), it is not subject to strict scrutiny.[8]

Second, challenges to the TCPA's authorization for the FCC to promulgate do-not-call regulations on the ground that the FCC *might* promulgate content- or speaker- based regulations related to the do-not-call registry are inappropriate because the agency could promulgate these regulations in a content-neutral manner. For that reason, such challenges are effectively an attack on

_____

[8] Defendants' contention that exempting nonprofits from a speech regulation warrants strict scrutiny is also in substantial tension with the Supreme Court's commercial speech jurisprudence, which subjects commercial speech to less than strict scrutiny. *See Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980); *see also, e.g., Contest Promotions, LLC v. City & Cty. of S.F.*, 874 F.3d 597, 601 (9th Cir. 2017) ("We have likewise rejected the notion that *Reed* altered *Central Hudson*'s longstanding intermediate scrutiny framework.").

the FCC regulations themselves, and the district court lacks jurisdiction to consider such challenges under the Hobbs Act, which places exclusive jurisdiction over such challenges in the courts of appeals. *See* 28 U.S.C. § 2342(1) (court of appeals has "exclusive jurisdiction" over challenges to FCC orders promulgated pursuant to the authority provided by the TCPA); *Gallion*, 2019 WL 2913970, at *1 ("[Defendant] also challenges several FCC orders promulgating exceptions to the TCPA.  But the FCC's regulatory exceptions are not before this court.  The proper venue to challenge an FCC order is *directly* in a court of appeals, not in the district court."); *see also, e.g.*, *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1149 (D. Minn. 2017) ("Because this Court lacks jurisdiction to entertain a constitutional challenge as it pertains to FCC orders, the Court does not consider those exceptions for the purpose of this analysis [of the constitutionality of the TCPA]."); *Moser v. FCC*, 46 F.3d 970, 973 (9th Cir. 1995) (holding that in First Amendment challenge to TCPA, district court has jurisdiction over constitutional challenge to "the statute and only the statute" because it "does not reach the [FCC] regulations which are outside the jurisdiction of the district court").  Accordingly, Defendants' challenge to the FCC's national do-not-call regulations, including 47 C.F.R. § 64.1200(d), *see* Defs. Mot. at 14, cannot be decided by this Court.

Defendants present little serious argument as to why the TCPA's do-not-call provisions would fail strict scrutiny, and no argument at all about why they would not satisfy intermediate scrutiny.  *See* Defs. Mot. at 15-16.  Nor would any such argument be persuasive; because the provisions allow the FCC to promulgate rules aimed at curbing for-profit telephone solicitation – conduct that impedes consumers' personal and residential privacy – and to do so in a manner that targets only the type of solicitation deemed most intrusive, it is narrowly tailored to a compelling government interest.

Defendants assert that the protection of residential privacy is not a compelling interest.  But the Fourth Circuit has suggested otherwise.  Although the court of appeals in *AAPC* did not expressly endorse the government's argument that "protecting personal and residential privacy" is a compelling

government interest, 923 F.3d at 168, it assumed that they were for purposes of its analysis.  The Fourth Circuit has already held that residential privacy is an important government interest, in the context of applying intermediate scrutiny to a different provision of the TCPA.  *Universal Elections*, 729 F.3d at 377.  And in a separate challenge to the FTC's do-not-call regulations, the Fourth Circuit concluded that residential privacy – in particular, the protection of the unwilling listener – is a "sufficiently strong subordinating interest that the [government] is entitled to protect."  *Nat'l Fed. of the Blind v. FTC*, 420 F.3d 331, 340 (4th Cir. 2005) (citation omitted); *see also, e.g.*, *Carey v. Brown*, 447 U.S. 455, 471 (1980); *Frisby v. Schultz*, 487 U.S. 474, 484 (1988).[9]

Defendants also point to the Fourth Circuit's decision in *Cahaly v. LaRosa*, 796 F.3d 399 (4th Cir. 2015), which is readily distinguishable.  In that case, the Court of Appeals found a South Carolina anti-robocall statute to be content-based because its autodialer restriction applied only to "unsolicited consumer telephone calls" and calls "of a political nature including, but not limited to, calls relating to political campaigns."  *Id.* at 402.  Thus, unlike the facially content-neutral "telephone solicitation" provisions in the TCPA, the South Carolina statute was facially content-based, applying only to two specific types of robocalls.  The Fourth Circuit thus found that the South Carolina statute was subject to strict scrutiny, which it did not survive because less-restrictive alternatives existed that would be at

---

[9] For this reason, every court to consider the TCPA's autodialer provision, including its 2015 amendment, has concluded that it serves a compelling interest.  *See, e.g.*, *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1046 (N.D. Cal. 2017) ("[T]he Court holds the TCPA serves a compelling government interest in promoting residential privacy."), *granting certification of appealability*, 2017 WL 1508719 (N.D. Cal. Apr. 27, 2017); *Mejia v. Time Warner Cable, Inc.*, 15-cv-6445 (JPO), 2017 WL 3278926, at *16 (S.D.N.Y. Aug. 1, 2017) (compelling government interest in protecting residential privacy "also extend[s] to cell phones"); *Greenley*, 271 F. Supp. 3d at 1150 ("That this" – protecting residential privacy – "is a compelling interest is well-established. . . ."); *Gallion v. Charter Commc'ns, Inc.*, 287 F. Supp. 3d 920, 928 (C.D. Cal. 2018) ("The Court agrees with plaintiff, the government, and the consensus view among district courts that the TCPA serves a compelling government interest in protecting residential privacy from the nuisance of unsolicited, automated telephone calls."), *aff'd on other grounds* No. 18-55667, 2019 WL 2913970 (9th Cir. July 8, 2019).  As noted, the national do-not-call registry and telemarketing restrictions serve that same interest.

least as effective as the South Carolina autodialer restriction.  But one of the less-restrictive alternatives suggested for the autodialer restriction in *Cahaly* was a do-not-call list—and the court did not suggest that the other proposed alternatives were less restrictive than a do-not-call list.  *See id.*, 796 F.3d at 405-06.  Thus *Cahaly* offers no meaningful guidance about whether the do-not-call authorizing provisions of the TCPA – and the "telephone solicitation" definition they incorporate – would survive strict scrutiny if the Court found them to be content-based.

Finally, Defendants contend that the do-not-call and telemarketing authorizing provisions are underinclusive because calls from nonprofits are at least as intrusive as calls from for-profit or other organizations.  *See* Defs. Mot. at 17.  But the legislative history of the TCPA indicates that Congress found telemarketing or sales calls – the sort of calls or messages that would not be made by tax exempt nonprofit organizations – implicated consumers' privacy rights with special force.  *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102–243, 105 Stat 2394 § 2 ("Findings") ("(1) The use of the telephone to *market* goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective *telemarketing* techniques. . . .  (5) Unrestricted *telemarketing*, however, can be an intrusive invasion of privacy. . . . (6) Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes *from telemarketers*" (emphasis added)); *see also, e.g.*, S. Hrg. 102-918 at 2 (Oct. 10, 1991) (statement of Sen. Hollings) ("In the 5th century, the scourge of civilization was Attila the Hun.  Today, the scourge of civilization is computerized sales calls. . . . These telephone pitches invade our peace and quiet, and waste our time.").  For this reason, Congress reasonably excluded calls made by a tax exempt nonprofit organization from its definition of "telephone solicitation," 47 U.S.C. § 227(a)(4)(C), having determined that calls from nonprofit organizations may not always be as intrusive as telemarking or sales calls.

The Fourth Circuit, moreover, has rejected the contention that a do-not call registry passes constitutional muster only if it applies to all speakers, a contention that the court of appeals has said

"would [] imperil[]" any First Amendment restriction "that applied to only some speakers." *Nat'l Fed'n of the Blind*, 420 F.3d at 348; *see also id.* at 349 ("[I]f we were to strike down these [do-not-call] regulations as underinclusive, we could well provoke legislatures to pass broader regulations that would prove far more damaging to free speech. We thus need not prevent the government from confronting problems incrementally; to do so would ignore the warning that the government is not required to 'make progress on every front before it can make progress on any front.'" (quoting *United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993))).  Thus, the TCPA's definition of telephone solicitation, as applied to the FCC's national do-not-call registry and telemarketing restrictions, is not underinclusive, but rather targets only the speakers Congress believed were most likely to implicate the privacy interests those regulations were intended to serve.  The TCPA's authorizing provisions permit the FCC to establish these regulations targeting telemarketing solicitation, which impedes consumer and residential privacy with special force, and to do so in a manner that is closely tailored to those privacy interests.  Accordingly, the statute's authorizing provisions – and its exclusion of tax exempt nonprofit organizations from those provisions – satisfy intermediate scrutiny, and there is no reason to believe that they would not survive strict scrutiny, as well, should the Court find that standard of review applies.

## CONCLUSION

For the foregoing reasons, the United States respectfully submits that the Court should uphold the constitutionality of the Telephone Consumer Protection Act of 1991.

Respectfully submitted this 22nd day of July, 2019,

JOSEPH H. HUNT
Assistant Attorney General, Civil Division

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

*/s/ Anjali Motgi*

21

ANJALI MOTGI, Trial Attorney
TX Bar No. 24092864 | D. Md. Bar No. 11870
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20530
(202) 305-0879 (tel.)
(202) 616-8470 (fax)
Anjali.Motgi@usdoj.gov

*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2019, a copy of the foregoing pleading was filed electronically

via the Court's ECF system which sent notification of such filing to counsel of record.


_/s/ Anjali Motgi_
ANJALI MOTGI, Trial Attorney
TX Bar No. 24092864
D. Md. Bar No. 11870
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St., N.W.
Washington, D.C. 20530
(202) 305-0879 (office)
(202) 616-8470 (fax)
anjali.motgi@usdoj.gov